## Sheetz v. United Traction Company, Appellant.

*Negligence—Street railways—Collision between horse and wagon— "Stop, look and listen"—Death.*

1. In an action against a street railway company to recover damages for death resulting from a collision between a street car and a wagon in which the deceased was riding, the case is for the jury and a verdict and judgment for plaintiffs will be sustained, where the evidence tends to show that the driver of the wagon drove a four mule team from a field through an opening in a fence on to a highway on which defendant operated a street railway; that the driver, without stopping, looked at a point where he could see the track for 750 feet to the east; that he looked again without stopping when his front mules were about to step upon the track, but before they had actually done so; and that seeing nothing he kept on and his wagon was immediately struck by a car coming from the east.

2. In such a case it was for the jury to determine in considering the question, where and when and how far away the team was visible to the motorman, what, if anything, he did in view of it, and whether in acting as he did he miscalculated the chance of its clearing the track before he reached it.

Argued Nov. 14, 1911. Appeal, No. 295, Oct. T., 1910, by defendant, from judgment of C. P. Berks Co., April T., 1908, No. 122, on verdict for plaintiffs in case of Annie A. Sheetz et al., children of Henry Sheetz, deceased, v. United Traction Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for death of plaintiffs' father. Before ENDLICH, P. J.

At the trial it appeared that at the time of the accident, deceased was riding in a wagon drawn by four mules which

178 SHEETZ *v.* UNITED TRACTION CO., Appellant.

Statement of Facts—Opinion of Court below.    [49 Pa. Superior Ct.

was being driven by another person, from a field through an opening in a fence, on to a highway where the defendant operated a street railway.

The circumstances of the accident are stated in Judge ENDLICH's opinion, infra.

Verdict and judgment for plaintiffs for $1,191.25.

On a rule 'for judgment for defendant, n. o. v. END-LICH, P. J., filed the following opinion:

A review of the evidence given at the trial of this case has led to the conclusion that the defendant's requests for binding instructions in its favor (and all except the first and second, which were affirmed, were that) could not properly have been granted, and that therefore its present application for judgment n. o. v. under the Act of April 22, 1905, P. L. 286, must be refused: see Lightcap v. Nicola, 34 Pa. Superior Ct. 189, 193; Casey v. Canning, 39 Pa. Superior Ct. 94, 98.

Though held affected, on the doctrine relative to fellow servants, with the acts and omissions of the driver of the wagon on which he was riding when it was struck by defendant's car, the deceased was not upon the railway track as a trespasser.   Neither at crossings nor between them is the public's right upon it relinquished, but only subordinated to the rights of the company: Beard v. Ry. Co., 3 Pa. Superior Ct. 171, 175; Raulston v. Traction Co., 13 Pa. Superior Ct. 412, 415; Grupp v. Transit Co., 42 Pa. Superior Ct. 271, 274.   Of course a person attempting to cross is bound to exercise due care.   He may be obliged before crossing to stop, look and listen: see Omslaer v. Traction Co., 168 Pa. 519, 521; Speakman v. Traction Co., 42 Pa. Superior Ct. 558, 564.   But it is settled that there is no fixed and invariable duty upon him to stop and listen as well as to look, and that, unless the necessity for such precaution be obvious, the question whether under the circumstances it should have been taken is for the jury even with respect to rural districts:'Talley v. Traction Co., 227 Pa. 393.   He is bound to look in every event and if his

view is obstructed to listen: Talley v. Traction Co., 227 Pa. 395, and it is his absolute duty to keep up his watchfulness and to look for approaching cars immediately before going upon the track: Smathers v. St. Ry. Co., 226 Pa. 212. The testimony of the driver of the team would indicate that he complied with these requisitions. "Q. You didn't stop your team before you drove on the track? A. No, sir. I leaned over the team and looked. . . . Q. How far from the track were you when you looked? . . . A. About fifteen feet. Q. . . . . You mean you were fifteen feet inside of the fence? . . . . A. About fifteen feet. Q. And where were the mules then, the front mules? A. Inside of the field . . . . about five feet to the bars. . . . Q. Then you didn't look again until you got on the track? A. I looked before I got on the track. Q. Where were you when you looked the second time? A. Coming out of the bars then. . . . The front mules had their heads just about on the front rail of the track."

He further states (and if his testimony on this point was not perfectly clear or consistent, its effect as a whole was still for the jury: Ely v. Ry. Co., 158 Pa. 233, 237; Com. v. Winkelman, 12 Pa. Superior Ct. 497, 513) that, having thus looked before leaving the field with a view of the track for 750 feet to the east and again just before committing himself to the crossing, he first saw the car at the distance stated when "the middle of the wagon was on the track" and the mules had cleared it. If his testimony is believed it must be understood that with an unobstructed view of the track the driver looked for an approaching car before reaching the track and ascertained that it was clear for a distance of 750 feet to the east; that he looked again when his front mules were about to step upon the track, but before they had done so, i. e., when they might still have been turned aside and the wagon held back; and that seeing nothing then he proceeded. Callahan v. Traction Co., 184 Pa. 425, 428, and McDyer v. Rys. Co., 227 Pa. 641, 644, are authority if any be needed that he was not obliged, in the absence of anything in sight, to stop and

wait, if the distance he could see made it safe for him to assume that he would be able to cross before a car coming along at a reasonable speed would strike him, and that the motorman in control of a car so approaching would be able to see the wagon on the track in time, if necessary, to stop before striking him. And that a car, if on its way towards him, would be run at a proper speed and that the motorman would perform his whole duty of vigilance and care, the driver of the wagon, in judging of the situation, was entitled to assume: Reeves v. R. R. Co., 30 Pa. 454, 463; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, 191; Callahan v. Traction Co., 184 Pa. 425, 428; Bard v. Ry. Co., 199 Pa. 94, 98; Bickel v. R. R. Co., 217 Pa. 456, 463. Surely in these circumstances it was for the jury to determine whether the driver, even if somewhat hard of hearing, was or was not guilty of negligence in going upon the track.

When it comes to the question of defendant's negligence it must be remembered that, whilst the burden of proving it is upon the plaintiff, that burden is met by proof of circumstances warranting the inference of negligence by repelling any other conclusion: Jones Bros. v. Ry. Co., 9 Pa. Superior Ct. 65. Hence if it appears by the evidence that the person or thing run into by a car must have been visible to the motorman, attending to his business, in time to have undeniably enabled him, putting forth ordinary efforts, to avoid the collision by stopping the car, the fact that this was not done constitutes a sufficient basis for a finding of negligence on his part: Harkins v. Traction Co., 173 Pa. 149; Evers v. Traction Co., 176 Pa. 376; McDyer v. Rys. Co., 227 Pa. 641; Davidson v. Traction Co., 4 Pa. Superior Ct. 86; Karahuta v. Traction Co., 6 Pa. Superior Ct. 319; Distasio v. Traction Co., 35 Pa. Superior Ct. 406. Nor can an error of judgment in the close calculation of a chance be set up in excuse or relief of it: Trout v. Elec. Ry. Co., 13 Pa. Superior Ct. 17, 24. Such miscalculations the law calls negligence and visits with its consequences: Gangawer v. R. R. Co., 168 Pa.

265, 270, whether brought home to plaintiff or to defendant. Now, if the wagon on the track was visible to the motorman on the car 750 feet away, as it must have been if the car was visible to the driver of the wagon at that distance, it is, for the purposes of this rule, of no moment whether the car was running at a speed of ten or of thirty miles an hour, so long as there is no evidence that it was running away or beyond control from a cause for which the defendant could not be held responsible. Running at ten miles an hour, as the motorman says he ran after first perceiving the team 110 to 140 feet away, he admits that the car might be stopped "in a very short distance," while not agreeing that it could within twenty-five feet, half its own length. According to what is said in Cusick's Election, 136 Pa. 459, 467, it might be permissible for the court to notice that an electric car running at ordinary speed can be stopped within a distance exceeding by very little its own length, that fact having appeared in many adjudicated cases, as, e. g., in the recent ones of Kennedy v. Traction Co., 210 Pa. 215, 218, and McDyer v. Rys. Co., 227 Pa. 641, 645. At all events, however, it would seem safe to assume that a car in good order running at no matter what possible rate of speed upon an ordinary track, even slightly down grade, can be brought to a standstill inside of 750 feet, fifteen times its own length. A car that could not would be nothing short of a public nuisance. Clearly, under the evidence in this case, it was for the jury to say where and when and how far away the team upon the track was visible to the motorman on the car, what if anything he did in view of it, and whether in acting as he did he miscalculated the chance of its clearing the track before he reached it—in a word, whether he was negligent or not. These being questions involving presumptions of fact exclusively within the lawful province of the jury, the court has neither the means of testing the accuracy of their decision nor the power of controlling it: Phila. Trust Co. v. R. R. Co., 160 Pa. 590, 600.

For these reasons there can be no judgment n. o. v. for

182  SHEETZ *v.* UNITED TRACTION CO., Appellant.

Opinion of Court below—Opinion of the Court.   [49 Pa. Superior Ct.

the defendant either upon the ground of absence of negli-· gence on its part, or upon the ground of contributory negligence on the part of the deceased. That being the only question raised by the application before the court.

The rule to show cause is discharged.

*Error assigned* was in overruling motion for judgment n. o. v.

*C. H. Ruhl*, with him *R. L. Jones*, for appellant.

*E. H. Deysher*, with him *H. Robert Mays*, for appellee.

Opinion by Head, J., March 1, 1912:

The record presents but two assignments of error which may be practically considered as one. The very able argument of counsel for appellant seeks to establish the single proposition that the learned trial judge should have directed a verdict for the defendant, or, failing in that, should thereafter have entered judgment for the defendant notwithstanding the verdict. In passing upon a motion for such judgment, the court below was of course required to review the whole of the testimony in order to determine whether or not the plaintiff had presented such a case as would demand or justify its submission to the jury. But in so doing he of necessity must consider the evidence from the angle most favorable to the plaintiff. If there was evidence which, taken by itself and accepted by the jury as credible, would have furnished a proper foundation for a verdict in favor of the plaintiff, then it was the duty of the trial judge to submit the case to the jury. And this would be none the less true even if there were other portions of the plaintiff's testimony which in turn, taken alone and adopted by the jury, ought to have led to a different conclusion.

The learned trial judge, in his opinion refusing to enter judgment for the defendant n. o. v., has in our opinion so analyzed and collated the testimony of the plaintiff's

witnesses as to convince us that he could not properly have done otherwise than he did. For us to attempt here to again review that evidence would serve no good purpose. We think it sufficient for us to say that having carefully gone over the opinion of the court below, in the light of all of the testimony, we are satisfied the conclusion he reached is the correct one. The assignments of error must therefore be dismissed.

Judgment affirmed.